ORDERED in the Southern District of Florida on 07/18/07.



Raymond B. Ray, Judge
United States Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

| | |
|---|---|
| In re: | Case No.96-22919-BKC-RBR |
| John Bellavia and Nancy Bellavia | Chapter 7 |
| Debtors. _____/ | |
| John Bellavia and Nancy Bellavia, | |
| Plaintiffs, | |
| v. | Adv. No. 06-01344-RBR-A |
| Eugene Simonetti | |
| Defendant _____/ | |

### MEMORANDUM OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court on May 22, 2007 and May 23, 2007 for the evidentiary hearing on Debtors Amended Complaint to Determine Dischargeability of a Debt. Upon consideration of the record, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT AND BACKGROUND

Page 1 of 8

John and Nancy Bellavia filed for protection under Chapter 7 of the United States Bankruptcy Code on June 19, 1996. (C.P. 1, 96-22919-BKC-RBR[1]). The filing was a "no asset" case, meaning that no distribution to creditors was expected. In their initial petition they failed to list Simonetti as a creditor and failed to give notice to Simonetti of the filing. The first Meeting of Creditors was held on August 6, 1996. Subsequent to the Meeting of Creditors, Trustee Welt filed a report of no distribution. (C.P. 9). On October 3, 1996 the Debtors Amended their Schedule F, which lists the creditors holding unsecured non priority claims. The only change was the addition of a debt owed to Eugene Simonetti in the amount of $250,000. The case then proceed as normal and a discharge was issued to the Debtors on October 17, 1996. (C.P. 14) Although, the Discharge Order was mailed to all creditors, Simonetti's name does not appear on the service list and he was not served. (C.P. 15). The case was then closed on November 18, 1996.

In June of 1996, Simonetti filed suit in Florida State Court against Bellavia to recover monies owed to him. (Broward Circuit Court Case No. 96-008394-CACE). However, the case was dismissed on Decemeber 20, 1996. At the time of the dismissal there had been no action taken by Simonetti. There was also no suggestion of bankruptcy filed by the Debtor in this State Court Case. In November of 2004, Simonetti again filed suit in Florida State Court against Bellavia to recover monies owed to him. (Broward Circuit Court Case No. 04-016183-CACE).This state court case remains open.

On March 20, 2006, Bellavia moved to reopen his Chapter 7 case with the purpose of bringing an adversary proceeding to determine whether the debt owed to Simonetti was discharged. This adversary was filed, case No. 06-1344-BKC-RBR-A, and proceeded to trial on May 22, 2007.

---

[1]Due to the age of the file some documents are only available in paper copy. These documents are noted as Court Paper Numbers, "C.P." All documents that are available online are noted as Docket Entries, "D.E."

John Bellavia, one of the Debtors, is related to Simonetti. During the course of 1993 and 1994 Simonetti lent a total of $269,000.00 to Bellavia and a company called JonJen Properties, Inc. Although Simonetti lent Bellavia the money prior to his filing bankruptcy on June 19, 1996, Simonetti was not listed on the original petition. Simonetti was subsequently added as a creditor in October of 1996 when the schedules were amended. An amended matrix was allegedly filed concurrently with the amended schedules.

The preparation and filing of the amended schedules and creditor matrix was done by Ira Silverstein, who was Bellavia's bankruptcy counsel. Silverstein testified that he added Simonetti to the creditors matrix but took no other steps to provide notice to Simonetti of the bankruptcy. *Transcript* at 97. Silverstein also testified that he did not have specific recollection of having added Simonetti to the matrix, but rather that it was his practice to do so. *Transcript* at 97. However, Silverstein after examining the Court file, agreed that Simonetti does not appear on the creditor matrix. *Transcript* at 103. Silverstein also stated that at no time did he communicate to Simonetti or any of his representatives that Bellavia had filed for bankruptcy. The testimony and the evidence show that no suggestion of bankruptcy was filed in the state court case, which was ongoing at the time of the bankruptcy. Further, Simonetti does not appear on the certificate of service of the discharge order.

I find John Bellavia to be an experienced and educated business person who successfully operated his business for various years. Further, I find that Bellavia contacted Simonetti and sought the loans from Simonetti.

Bellavia testified that a company that he owned, Bellco Contracting, Inc, (hereafter "Bellco"), filed a chapter 11 proceeding on August 4, 1995. (95-23012-BKC-RBR). During the pendancy of the Bellco bankruptcy Simonetti allegedly visited the Bellco offices and was made aware of the Bellco filing.

Bellavia also testified that in the 60 days prior to the filing of his own personal chapter 7 petition, he advised Simonetti of his intentions to file bankruptcy. *Transcript* at 123. However,

this contradicts his own previous testimony where he stated he never used the word bankruptcy when talking to Simonetti. *Transcript* at 67. He further had trouble recalling the times, places and the substance of the conversations where he might have told Simonetti about the bankruptcy. I find John Bellavia to lack credibility as a witness. His testimony was vague, unresponsive and evasive. His most common response was "I'm not sure". His testimony was not supported by any credible documentary evidence or third party witness testimony.

Simonetti also took the stand. Simonetti is an elderly man whose education, work experience and knowledge is unknown to the Court. I believe him to be relatively unsophisticated as to litigation and bankruptcy and that he relied upon his attorneys.

On the topic of when he knew of Bellavia's bankruptcy Simonetti was not clear. He stated that he never knew of any personal bankruptcy filing by either of the Bellavias. More specifically he said that his attorney, Klapholz, never told him. Yet, later on Simonetti reluctantly admits that Klapholz did in fact inform him of the bankruptcy proceedings. *Transcript* at 176. He also stated that he believed the bankruptcy of Bellavia did not exist. *Transcript* at 176 (SIMONETTI: "Mr. Klapholz was told by Blasi that [Bellavia] was in bankruptcy. His crooked lawyer told my lawyer, because the bankruptcy did not exist."). However it cannot be overlooked that Simonetti did hire a private agency to investigate the Bellavia's assets. This is evidence that he intended the monies given to Bellavia to be a loan. The investigation report issued in May of 1996 did not show a bankruptcy filing. This information is part of the reason Simonetti believed that Bellavia's bankruptcy was "phony" . *Transcript* at 196. Of course, Bellavia did not file the petition until June 19, 1996, which was after the private agency report was submitted to Simonetti.

It is also patently evident that Simonetti struggles to accurately recall dates and details. Several times he gave inconsistent responses as to when events occurred. For example when Simonetti was asked when he traveled to Florida to meet with Bellavia regarding the repayment of the monies owed him, the following colloquy occurred:

Page 4 of 8

THE COURT: Do you recall when you went to Florida, what year?

SIMONETTI: Must have been right after— what year was this written?

THE COURT: Look at Line 23 on Page 10. "I believe it was around 1992 or '93"

SIMONETTI: Okay. That's it. Around that time, Your Honor.

THE COURT: So '92 or '93?

SIMONETTI: Right.

THE COURT: By the checks in evidence, he was still writing checks in 1994 on your account.

SIMONETTI: Then it was after '94.

Finally, Simonetti, also stated that he was not being repaid for his investment in Bellaviva's company JonJen, however it was not clear whether he viewed it as loan or an investment. An investment would be something that would be at risk to being lost if the venture did not succeed, whereas a loan would be repaid regardless of whether the venture was successful.  Simonetti's testimony about his repeated attempts to have Bellavia repay him would indicate that he views the transaction as a loan, yet he also called it an investment. This inconsistency merely adds more credence to the finding that  Simonetti's only consistencies were his distaste for Bellavia and his inconsistency.

With the above facts the Court now turns to the law to determine whether Simonetti's debt was discharged by the Bellavia bankruptcy proceeding.

## Conclusions of Law

The issue before the Court is whether Simonetti's unscheduled loan to Bellavia is subject to the discharge injunction issued in the 1996 bankruptcy.

The salient code provision is 11 U.S.C. §523(a)(3), which states that a discharge order does not discharge a debt that is "neither listed nor scheduled under section 521(1) of this title, if known to the debtor, of the creditor to whom such debt is owed, in time to permit... timely filing

of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing." Thus this section has two requirements: (1) lack of notice or lack of actual knowledge of the bankruptcy filing and (2) the in ability to timely file a proof of claim.

The Court has already held that it was a fact that Simonetti never received official notice of the bankruptcy. Therefore the solution to this case lies in the determination of: (1) whether Simonetti had actual knowledge of bankruptcy and (2) if after receiving such knowledge he had sufficient time to file a proof of claim.

By examining the issue of sufficient time to file a proof of claim, it becomes unnecessary to conduct any further analysis. There is a line of cases in the Eleventh Circuit that have dealt with the issue of reopening a of a no-asset chapter 7 case to add an omitted creditor and thereby have the creditor subject to the discharge order. The key rule of law which runs common to all of the cases is that "an unscheduled creditor in a case with no assets is never prevented from timely filing a proof of claim."see *In re Garrett*, 266 B.R. 910, 914 (Bankr. S.D. Ga. 2001); *In re Castellana*, 2004 Bankr. LEXIS 429 at *3 (Bankr. N.D. Ga. 2004)(denying motion to reopen case to add omitted creditor because it would be fruitless, since §523(a)(3)(A) is "inapplicable in a no-asset chapter 7 case; and, whether or not it was listed in a debtor's schedules, a prepetition claims is discharged unless the claim is of a kind specified in §523(a)(2),(4) or (6)); *In re Johnson*, 208 B.R. 746, 749 (Bankr. S.D. Ga. 1996) (because the case was a no asset case the time period to file a claim had been extended indefinitely and therefore had not expired rendering §523(a)(3)(A) to be inapplicable); *Marks v. Firststar Trust Co. (In re Marks)*, 195 B.R. 943, 945 (Bankr. M.D. Fla. 1996)(holding a debt to be discharged in a no asset chapter 7 case, because no section of 523 was applicable and the time to file claims although technically open was an "exercise in futility"); *Garza v. Vererns Admin (In re Garza)*, 138 B.R. 100, 101 (Bankr. M.D. Fla. 1992)(holding a debt to be discharged because §523(a)(3)(A) to be inapplicable because the time to file a claim was still open).

In *Marks v. Firststar Trust Co. (In re Marks)*, Judge Paskay was faced with an almost

indistinguishable set of facts as are currently before this Court. The case was a no asset chapter 7, where the debtors had failed to schedule and list the debt they owed. They received their discharge. After the discharge was issued the case was closed. However, proceedings which had begun in state court against the debtors after the issuance of the discharge and before the closing of case proceeded all the way to judgment. It was only when they were faced with a contempt order by the state court, for failure to appear at a deposition scheduled in order to aid the execution of the judgment, that the debtors came back to bankruptcy court and moved to reopen the case. See Marks v. Firststar Trust Co. (In re Marks), 195 B.R. at 944.

The key in the Marks case, the cases listed above, and the case before this Court is FED. R. BANKR. P. 2002(e). Pursuant to FED. R. BANKR. P. 2002(e), in a no asset chapter 7 case the clerks office can extend the time of filing a proof of claim indefinitely, if and until, "sufficient assets become available for the payment of a dividend". The invocation of this rule, by the clerks office, has tolled the time to file a proof of claim. See Notice of Meeting of Creditors And Fixing Dates, C.P. 5 (stating "at this time, however, it appears that there are no assets from which any distribution can be paid to creditors. DO NOT FILE A PROOF OF CLAIM AT THIS TIME. If assets are discovered at a later date, creditors will be notified and given an opportunity to file claims."). This has made §523(a)(3)(A) inapplicable to the proceedings, because, as of today, Simonetti now has knowledge of the bankruptcy and can still file a timely, although worthless, proof of claim.

Further, §523(a)(3)(B) has not been raised in any of the pleadings or arguments. To this end the Court reviewed all of the state court pleadings and filings which are in evidence. There is nothing to suggest that §523(a)(2),(4) or (6) are applicable to the debt that Bellavia owes to Simonetti. Accordingly, I find as a matter of law there is nothing in the record before me that would make any provision of §523 applicable, as such, the debt cannot be exempted from discharge.

The Court, however, finds that this result is less then satisfying. I am in agreement with

Judge Paskay's observation that the "remedy provided to an unscheduled creditor is utterly meaningless" in cases such this. Although constrained by the code and law, the Court expressly notes that Mr. Bellavia's story of a series honest mistakes by him and bankruptcy counsel was not believed by the Court, and absent the above line of cases this ruling very well might have been different.

Since the above analysis is dispositive, there is no need to examine any other issues. A separate final judgment will entered in accordance with the foregoing.


Copies furnished to:

all interested parties.